Abraham **SCHERR** et al., Plaintiffs, in their own behalf and on behalf of all persons similarly situated,

v.

John **VOLPE**, individually and as Secretary of Transportation of the United States, Washington, D. C., et al., Defendants.

No. 71–C–347.

United States District Court, W. D. Wisconsin.

Dec. 29, 1971.

Frederick H. Miller, Madison, Wis., for plaintiffs.

Richard E. Barrett, E. Gordon Young, Asst. Attys. Gen., John O. Olson, U. S. Atty., James R. Mack, Asst. U. S. Atty., Madison, Wis., for defendants.

## OPINION AND ORDER ON MOTION FOR ORDER SUSPENDING THE PRELIMINARY INJUNCTION

JAMES E. DOYLE, District Judge.

Defendants Clapp, Redmond, and Banaszak have moved for an order suspending the preliminary injunction[1] entered herein December 7, 1971, and the motion has been briefed and heard. The record has been supplemented since December 7, 1971, with various exhibits and affidavits. For the purpose of deciding the motion to suspend the preliminary injunction, and only for that purpose, I reaffirm the findings of fact contained in the December 7, 1971, order, and additionally I find as fact the propositions stated in the section of this opinion which follows immediately.

### FACTS

On or about January 21, 1971, the Division of Highways of the Department of Transportation of the State of Wisconsin (hereinafter "State") concluded that an environmental statement of the kind described in 42 U.S.C. § 4332(2)(C) was not required with respect to the 12 mile project here in dispute, and the Wisconsin Division of the Federal High-

---

1. The heading of the Opinion and Order entered December 7, 1971, 336 F.Supp. 882 was: "Opinion and Temporary Restraining Order". In the text, however, plaintiffs' motion was treated as a motion for a preliminary injunction. To remove any ambiguity, I now declare that the order entered that day was intended to be, and is to be construed as, a preliminary injunction.

way Administration (hereinafter FHWA) joined in this conclusion. The record is silent as to the basis for this conclusion, and it appears that no explanation was recorded as to why the project was not considered a "major Federal [action] significantly affecting the quality of the human environment . . .." Thereafter FHWA authorized the State to proceed to advertise for bids and to enter into certain contracts for construction; the State proceeded to enter into contracts covering a 4.1 mile segment of the total project; construction on this segment had begun and was in progress at the time the December 7, 1971, injunction was entered.

Among the effects of the injunction have been the following: This 4.1 segment of the highway has been left unimproved and there continues in existence certain hazards to the physical well-being of users of the highway arising from its traffic load. A substantial number of employees of several contractors have been deprived of a substantial amount of wages which they would otherwise have received for work to be performed on this project. Two or more of the contractors have suffered substantial financial loss. I take judicial notice, from various petitions and letters submitted to the court, that a substantial number of the residents of the affected area desire that the highway project proceed without further delay.

## OPINION

Although a number of contentions have been advanced by the movants for suspension of the preliminary injunction, two appear to be major.

The first is that under 42 U.S.C. § 4332(2) (C), the federal administrative agency (here, the FHWA) enjoys discretion to determine whether a particular project is "major" and whether it is a project "significantly affecting the quality of the human environment"; that FHWA has exercised this discretion by determining that this particular project does not meet these tests; that this administrative determination is not to be overturned by a court unless it is arbitrary and unreasonable; and that this particular administrative determination was neither arbitrary nor unreasonable.

I cannot accept this contention.

Of course, it is familiar law that Congress may delegate certain functions to administrative agencies, that the agencies may then exercise the discretionary powers granted to them, and that a specific administrative exercise of such discretionary powers is to be respected by the courts unless it is arbitrary or unreasonable. But § 4332(2) (C) is a flat command to FHWA, to the fullest extent possible, to make a detailed statement on five specific environmental factors in connection with all "major federal actions significantly affecting the quality of the human environment . . .." Obviously, FHWA and other federal agencies are called upon to decide what § 4332(2) (C) requires of them in certain situations. FHWA may form an opinion that a particular project is not major, or that it does not significantly affect the quality of the human environment, and that, therefore, FHWA is not required to make the detailed environmental statement. However, when its failure is then challenged, it is the court which must construe the statutory standards ("major" and "significantly affecting") and, having construed them, then apply them to the particular project, and decide whether the agency's failure violates the Congressional command.

[redacted] Even if we were to assume, as I emphatically do not assume, that FHWA enjoyed some measure of discretion as to whether to prepare or not to prepare the environmental statement, I would be prepared to say that the plaintiffs here are likely to prevail in their contention that the particular exercise of that discretion was arbitrary and unreasonable. It is difficult to understand how FHWA might have reached the conclusion that this project was not "major", or the conclusion that the project does not significantly affect the quality of the human

environment. It appears that no explanation for either of these conclusions was recorded at the time they were reached, nor has any explanation since been offered, even by counsel in argument. Nor has any contention been made that anything rendered it impossible, or even particularly difficult, to comply with the Statute.

The second major contention by the movants for suspension of the preliminary injunction may be summarized as follows:

Assume that a project is major. Assume that it significantly affects the quality of the human environment. Assume that the federal agency nevertheless fails to prepare an environmental statement. In short, assume a clear violation of the command of § 4332(2) (C). Nevertheless, in order for a plaintiff to obtain an injunction stopping the project, the plaintiff must show that, on the merits, an administrative decision to build a highway despite certain environmental consequences was itself arbitrary and unreasonable.

To accede to this contention would be to do violence to the clear Congressional purpose. That purpose, as clearly expressed in the National Environmental Policy Act of 1969, was to commit the vast resources of the federal government to "encourage productive and enjoyable harmony between man and his environment . . .." 42 U.S.C. § 4321. The Act provides that there are to be careful cooperative efforts among all of the appropriate federal, state, and local agencies of government in order to insure that environmental consequences are clearly perceived and evaluated. Specifically, § 4332(2) (C) requires not only that environmental statements be prepared by the primary federal agency, but that other appropriate federal agencies be consulted in the course of its preparation, and that the statement be furnished to appropriate federal, state, and local agencies. There is much more which might be said about the scheme of the Act, but

for the present purpose it is enough to say that the Act requires the agencies of the federal government to assemble all of the pertinent information, to subject it to expert scrutiny, and to articulate clearly and in writing an evaluation of the various benefits and costs which are being balanced. To suggest that when the federal agencies flatly fail to perform this function, a plaintiff in a lawsuit such as this suit must perform it as a condition to obtaining injunctive relief is to suggest that one of the central purposes of the Act be frustrated.

Other contentions by the movants have been dealt with in the opinion of December 7, or are wholly lacking in merit.

Because the legislation involved in this lawsuit is relatively new, and because the function of the court in this situation is obviously not well understood, I add a few words.

In passing upon the motion to suspend the preliminary injunction, it is the function of the court to decide whether the plaintiffs enjoy a reasonably good chance to prevail in their contention that the FHWA violated § 4332(2) (C); whether the aesthetic, conservational, and recreational interests asserted by these plaintiffs will be irreparably damaged if construction proceeds; and whether such irreparable damage, if it will occur, justifies injunctive relief as against the competing interests which have been damaged and will be damaged as a result of the project stoppage. I need not repeat what I have said on December 7 and again in this opinion about whether FHWA violated § 4332(2) (C), nor about the environmental damage which will occur if construction proceeds. I am well aware that those whose interests are adversely affected by the preliminary injunction firmly believe nevertheless that the balance should be struck in their favor. As I have said, it is not for me ultimately to decide whether the benefits expected to flow from the highway project outweigh the environmental costs. But in the constellation of interests affected by

the injunction or by a suspension of the injunction, I give primacy to this interest: That the federal agencies obey the Congressional command to assemble the information necessary to an informed decision, to perceive the choices to be made, to evaluate the factors thus perceived, and to articulate in writing the reasons for deciding whether to proceed or not to proceed with a major project significantly affecting the quality of the human environment.